1

2

3

4

5

6

7

8          UNITED STATES DISTRICT COURT

9          EASTERN DISTRICT OF CALIFORNIA

10

11   MICHAEL JACE,                        Case No.: 1:22-cv-00419-AWI-CDB (PC)

12              Plaintiff,                **FINDINGS AND RECOMMENDATIONS TO DISMISS CERTAIN CLAIMS AND DEFENDANTS**

13        v.

14   MARGARET LIRONES, et al.,            (Doc. 1)

15              Defendants.

16

17        Plaintiff Michael Jace is proceeding *pro se* and *in forma pauperis* in this civil rights action

18   pursuant to 42 U.S.C. § 1983.

19        **I.      SCREENING REQUIREMENT**

20        The Court is required to screen complaints brought by prisoners seeking relief against a

21   governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).

22   The Court must dismiss a complaint or portion thereof if the complaint is frivolous or malicious,

23   fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant

24   who is immune from such relief. 28 U.S.C. § 1915A(b). The Court should dismiss a complaint if

25   it lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal

26   theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

27   //

28   //

1

## II.      PLEADING REQUIREMENTS

### A.  Federal Rule of Civil Procedure 8(a)

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). A complaint must contain "a short and plain statement of the claims showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512 (internal quotation marks & citation omitted).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Factual allegations are accepted as true, but legal conclusions are not. *Id*. (citing *Twombly*, 550 U.S. at 555).

The Court construes pleadings of *pro se* prisoners liberally and affords them the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations," not his legal theories. *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). Furthermore, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin*., 122 F.3d 1251, 1257 (9th Cir. 1997) (internal quotation marks & citation omitted), and courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks & citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not sufficient to state a cognizable claim, and "facts that are merely consistent with a defendant's liability" fall short. *Iqbal*, 556 U.S. at 678 (internal quotation marks & citation omitted).

### B.  Linkage and Causation

Section 1983 provides a cause of action for the violation of constitutional or other federal rights by persons acting under color of state law. *See* 42 U.S.C. § 1983. To state a claim under

2

1   section 1983, a plaintiff must show a causal connection or link between the actions of the

2   defendants and the deprivation alleged to have been suffered by the plaintiff. *See Rizzo v. Goode*,

3   423 U.S. 362, 373-75 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the

4   deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative

5   act, participates in another's affirmative acts, or omits to perform an act which he is legal required

6   to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740,

7   743 (9th Cir. 1978) (citation omitted).

8       **III.   DISCUSSION**

9           **A. Plaintiff's Complaint**

10          Plaintiff's complaint names as Defendants Warden Ken Clark, Senior Librarian Margaret

11   Lirones, and Captain A. Peterson, all employed at Corcoran State Prison. (Doc. 1 at 1-2.)

12          Plaintiff asserts access to court claims, in violation of the First and Fourteenth

13   Amendments, against all Defendants. (Doc. 1 at 3-17.) Plaintiff seeks "a declaration that the acts

14   and omissions described herein violate his rights," a preliminary and permanent injunction

15   ordering Defendants "to cease their obstruction of" his fundamental right to access the courts,

16   "nominal compensatory damages" and "nominal damages and punitive damages in the amount of

17   $25,000" against each Defendant "jointly and severally," costs of suit, and any additional relief

18   the court deems proper and equitable "including an extension of deadline to allow plaintiff to

19   opportunity to file a timely appeal." (*Id*. at 19.)

20          Plaintiff's specific factual allegations will be summarized below in the discussion of each

21   claim where appropriate.

22          **B. The Applicable Legal Standards**

23          Prisoners retain the First Amendment right "to petition the government for a redress of []

24   grievances," which includes the specific right "to meaningful access to the courts[.]" *Silva v. Di*

25   *Vittorio*, 658 F.3d 1090, 1101-02 (9th Cir. 2011) (citation omitted), *abrogated on other grounds*

26   *as stated in Richey v. Dahne*, 807 F.3d 1202, 1209 n.6 (9th Cir. 2015). The constitutional right of

27   access to the courts generally requires prison officials to ensure that prisoners have the "capability

28   of bringing contemplated challenges to sentences or conditions of confinement before the courts."

1   *Lewis v. Casey*, 518 U.S. 343, 356 (1996). To that end, depending on the circumstances, prison

2   officials may be required affirmatively to "help prisoners exercise their rights" (*e.g.*, provide

3   reasonable access to "adequate law libraries or adequate assistance from persons trained in the

4   law"), or simply to refrain from "active interference" in prisoner litigation. *Silva*, 658 F.3d at

5   1102 (citation omitted); *see, e.g.*, *Bounds v. Smith*, 430 U.S. 817, 828 (1977) (holding "that the

6   fundamental constitutional right of access to the courts requires prison authorities to assist

7   inmates in the preparation and filing of meaningful legal papers by providing prisoners with

8   adequate law libraries or adequate assistance from persons trained in the law") (footnote omitted),

9   *overruled in part on other grounds, Lewis*, 518 U.S. at 354. Prison officials, however, are not

10  required to ensure access beyond "[t]he tools ... inmates need in order to attack their sentences,

11  directly or collaterally, and in order to challenge the conditions of their confinement." *Lewis*, 518

12  U.S. at 355 ("*Bounds* does not guarantee inmates the wherewithal to transform themselves into

13  litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall

14  claims.... Impairment of [such] other litigating capacity is simply one of the incidental (and

15  perfectly constitutional) consequences of conviction and incarceration.").

16      To state a viable denial of access claim, a prisoner must plausibly show that some official

17  misconduct (*e.g.*, alleged inadequacies in the jail's library facilities or legal assistance program)

18  caused "actual injury" — that is, that it frustrated or is impeding a plaintiff's attempt to bring a

19  nonfrivolous legal claim. *Lewis*, 518 U.S. at 348-49; *Nev. Dep't of Corr. v. Greene*, 648 F.3d

20  1014, 1018 (9th Cir. 2011) (citing *Lewis*, 518 U.S. at 349) ("'Actual injury' means 'actual

21  prejudice with respect to contemplated or existing litigation'"), cert. denied, 566 U.S. 911 (2012).

22  The plaintiff's complaint must describe the alleged underlying claim, whether anticipated or lost,

23  and show that it is "nonfrivolous" and "arguable." *See Christopher v. Harbury*, 536 U.S. 403, 415

24  (2002).

25                **C.  Claim I: Access to Court's Claim Against Defendant Lirones**

26      Plaintiff asserts that Defendant Lirones, Senior Librarian at CSP, violated his First and

27  Fourteenth Amendment rights by obstructing his ability to access the courts. (Doc. 1 at 4.)

28  //

1    Plaintiff contends that on February 18, 2021, he submitted a Preferred Legal User (PLU)

2  request that was denied. (Doc. 1 at 4.) He states that with a PLU designation he would have been

3  "granted access to the law library while Corcoran Prison operated under a modified program due

4  to COVID-19" as only PLUs were permitted law library access at that time. (*Id.*) Plaintiff asserts

5  the modified program was in effect from February 11, 2021 to March 16, 2021. (*Id.*)

6    Plaintiff further contends that because the modified program was in effect following his

7  receipt of "the final judgment for case number 2:19-cv-03020-ODW-KES," where judgment was

8  entered February 5, 2021, he "was denied access to the law library." (Doc. 1 at 4.) Plaintiff

9  contends that had Lirones "properly processed the PLU and notified" him of the denial within

10  seven days, he would have "had the opportunity to resubmit the PLU with the additional

11  information requested." (*Id.* at 5.) However, Plaintiff "did not receive the improper PLU denial

12  until March 3, 2021." (*Id.*) Plaintiff alleges it was not possible at that point to resubmit the PLU,

13  "to then research to file appropriate documents prior to the deadline of either March 5 or March 8,

14  2021 as stated on pg 2, line 6-11 of the federal district court judgment entered on August 5,

15  202[0],[1] when defendant Lirones made no attempt to adhere to CDCR statues [sic] regarding

16  time." (*Id.*)

17    Next, Plaintiff contends he made a second PLU request on March 17, 2021; it too was

18  "improperly denied." (Doc. 1 at 5.) Again he did not receive the denial in a timely manner

19  pursuant to "CDCR regulations" because he received it on May 7, 2021, or "fifty-one days after

20  the PLU was submitted." (*Id.*) Plaintiff states "[t]his PLU denial was also improper being too

21  restrictive." (*Id.*) Plaintiff contends "Defendant Lirones did not allow for litigation available to

22  plaintiff as was stated by the district court in their judgment entered August 5, 2021." (*Id.*)

23    Plaintiff explains the "August 5, 202[0]" judgment states Plaintiff "had litigation available

24  to him until April 6, 2021, on pg 2, line 15-20." (Doc. 1 at 6.) He contends "contrary to the court,

25  defendant Lirones erroneously uses March 8, 2021, as reason to deny [his] March 17, 2021 PLU

26

27  [1] Because Plaintiff's references to an "August 20, 2021" order cannot allow for a timely response deadline
in March of 2021—in other words, before the judgment or order even issued—it is evident Plaintiff meant

28  to refer to a date in August 2020 rather than August 2021.

request." (*Id.*) Plaintiff further alleges Lirones's actions are "not isolated incidents" and that there "is a pattern of callous indifference." (*Id.*) Plaintiff contends (1) a PLU request submitted May 27, 2021 while he was housed in ad-seg was returned 26 days later on June 22, 2021; (2) a PLU request submitted May 28, 2021, after his release from ad-seg to "Yard 3B," was returned 42 days later on July 8, 2021; (3) a PLU request dated August 16, 2021 was not returned until September 7, 2021, and "is the only time Lirones admits she did not respond to the PLU request per Title 15 3312(b)(4)." (*Id.*) Plaintiff asserts that "admission only occurred" after he filed a complaint with the Office of the Inspector General (OIG) "that launched an investigation." (*Id.*) Plaintiff contends the OIG "does not have the authority to perform investigations of CDCR staff misconduct." (*Id.* at 6-7.) Plaintiff takes specific issue with Defendant Lirones responses, presumably during the OIG investigation, concerning an August 16, 2021 request, wherein Lirones claimed she did not see "the photocopy until Friday, October 8" because it was "printed on white paper" and "became mixed with other mail" because Lirones's signature appeared on the form on September 7, 2021. (*Id.* at 7.) Plaintiff contends Lirones did not provide a valid reason for her "dereliction of duty." (*Id.*) He contends Lirones's "repeated violations are also violation of Government Codes 19572 and 19990." (*Id.*)

Finally, Plaintiff contends he has no plain, adequate or complete remedy at law to redress these wrongs. (Doc. 1 at 7.) He asserts he "has been and will continue to be irreparably injured … unless the court grants the declaratory and injunctive relief" he seeks. (*Id.*)

Liberally construing the complaint, Plaintiff has plausibly alleged that Lirones improperly denied his various PLU requests that would have permitted him access to the law library during a modified program causing Plaintiff to miss a deadline in another case. However, Plaintiff must also show that his underlying anticipated or lost claim is "nonfrivolous" and "arguable." This he has not done. Plaintiff does not sufficiently explain what he means by "litigation available" to him in case number 2:19-cv-03020-ODW-KES.

**1.  Judicial Notice of the Underlying Action**

In further consideration of Plaintiff's claim, this Court takes judicial notice of *Jace v. Davis*, Case No. 2:19-cv-03020-ODW-KES, an action filed in the United States District Court for

1    the Central District of California. *See Harris v. County of Orange*, 682 F.3d 1126, 1131-32 (9th

2    Cir. 2012) (court may take judicial notice of "documents on file in federal or state courts").

3         A review of that action's docket reveals Plaintiff filed a petition for writ of habeas corpus

4    on April 18, 2019. (19-3020 Docket Entry No. 1.) In a Report and Recommendation issued

5    August 5, 2020, Magistrate Judge Karen E. Scott recommended dismissal of the action with

6    prejudice, finding no ineffective assistance of counsel on any basis asserted. (19-3020 Docket

7    Entry No. 51.) The recommendations included notice that a party had the right to "timely file

8    Objections as provided in the Federal Rules of Civil Procedure and the instructions attached to"

9    the Report. (*Id*. at 36.) In the Notice of Filing of Magistrate Judge's Report and Recommendation,

10   served that same date, Plaintiff was advised he could file objections "not later than August 28,

11   2020 ." (19-3020 Docket Entry No. 50) (emphasis in original.) The notice further advised that a

12   failure to obey "within the time limit specific shall be deemed a consent to any proposed findings

13   of fact" and that "upon lapse of the time for filing Objections, the case will be submitted to the

14   District Judge for disposition." (*Id*.) A review of the docket reveals Plaintiff did not file

15   objections to the Report and Recommendation. On February 5, 2021, District Judge Otis D.

16   Wright II issued an Order Accepting Report and Recommendation of U.S. Magistrate Judge. (19-

17   3020 Docket Entry No. 52.) Judgment was entered denying the petition for writ of habeas corpus

18   and dismissing the action with prejudice. (19-3020 Docket Entry No. 53.) That same date, Judge

19   Wright also issued an Order Denying Certificate of Appealability. (19-3020 Docket Entry No.

20   54.)

21        On March 25, 2021, Plaintiff filed a document dated March 17, 2021—entered on the

22   docket as a motion for reconsideration—wherein he alleges he mailed objections to the

23   magistrate's report and recommendation, alleging numerous violations of his Sixth and

24   Fourteenth Amendment rights were violated "as documented in the Objection to the R&R." (19-

25   3020 Docket Entry No. 55.) Plaintiff stated his objections were "filed in a timely manner" and

26   asked Judge Wright to vacate the Report and Recommendation, alleging it had "been entered in

27   error." (*Id*.)  On April 22, 2021, Judge Wright issued an Order Denying Motion for Relief from

28   Judgment Under Rule 60. (19-3020 Docket Entry No. 56.)

1    On June 22, 2021, Plaintiff filed a document titled "Request To Leave To File A Late

2    Appeal (Good Cause Appearing)." (19-3020 Docket Entry No. 57.) In that request, Plaintiff

3    alleges (1) he was denied physical access to the law library, preventing him from "doing any

4    research in order to respond to the Magistrate Judge's Report and Recommendation that was

5    entered into record due to error," (2) that the prison was tampering with his legal mail, and (3)

6    that the "institutional mail is unreliable and there is no accountability, rendering the page system

7    useless." (*Id.*) On August 6, 2021, Judge Wright issued an Order Denying Petitioner's Request for

8    Leave to File a Late Appeal. (19-3020 Docket Entry No. 58.)

9    Also on August 6, 2021, Plaintiff filed a Notice of Appeal with the Ninth Circuit Court of

10   Appeals. (19-3020 Docket Entry No. 59.) Ultimately, on June 24, 2022, the Ninth Circuit issued

11   its Order denying the request for certificate of appealability because Plaintiff had "not shown

12   'that (1) jurists of reason would find it debatable whether the district court abused its discretion in

13   denying the Rule 60(b) motion and, (2) jurists of reason would find it debatable whether the

14   underlying section [2254 petition] states a valid claim of the denial of a constitutional right.'"

15   (19-3020 Docket Entry No. 70.)

### 2.  Permitting Amendment Would Be Futile

17   As noted above, to state a cognizable access to courts claim, Plaintiff must also show that

18   his underlying anticipated or lost claim is "nonfrivolous" and "arguable." Typically, the Court

19   would permit Plaintiff leave to file a first amended complaint to cure that deficiency.  Here,

20   however, amendment would be futile and leave to amend should not be granted. "A district court

21   may deny leave to amend when amendment would be futile." *Hartmann v. CDCR*, 707 F.3d

22   1114, 1130 (9th Cir. 2013); accord *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) ("Courts

23   are not required to grant leave to amend if a complaint lacks merit entirely"). This is so because

24   the Ninth Circuit has already ruled that Plaintiff's habeas corpus petition was properly denied by

25   the Central District. Hence, any underlying anticipated or lost claim cannot be said to be

26   nonfrivolous or arguable. (19-3020 Docket Entry No. 70 ["jurists of reason would find it

27   debatable whether the underlying section [2254 petition] states a valid claim of the denial of a

28   constitutional right"].) Meaning, despite Plaintiff's assertions that he was denied access to the

1  courts by the actions of Defendant Lirones, he cannot show that those actions resulted in his

2  losing an arguable claim. The claim was effectively heard and denied on June 24, 2022 by the

3  Ninth Circuit.

4       In sum, Plaintiff has failed to state a cognizable access to courts claim against Lirones and

5  amendment would be futile. His claim against Defendant Lirones should be dismissed.

6       **D.  Claims II & III: Access to Court's Claims Against Defendants Clark &**

7                  **Peterson**

8       To the extent Plaintiff asserts the same access to courts claims against Defendants Clark

9  and Peterson, he does not state cognizable claims. (Doc. 1 at 8, 12 ["Right to access the Court

10  guaranteed by the First and Fourteenth Amendment"] & 12 ["To engage in protected conduct as

11  guaranteed by the First Amendment"].) The same facts concerning Defendant Lirones are

12  asserted in these claims, in addition to references to related grievances filed by Plaintiff (*see* id. at

13  9-11) and inquiries into those grievances (*see* id. at 13-17).

14       For the same reasons explained above, specifically in section III., C., 2., Plaintiff has

15  failed to state cognizable access to courts claims against Defendants Clark and Peterson and

16  granting him leave to amend would be futile. *Hartmann,* 707 F.3d at 1130. His claims should be

17  dismissed.

18       Further, Plaintiff is advised prisoners do not have "a separate constitutional entitlement to

19  a specific prison grievance procedure." *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003)

20  (citing *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988)). Prison officials are not required under

21  federal law to process inmate grievances in any specific way. *Jordan v. Asuncion*, No. CV 17-

22  1283 PSG (SS), 2018 WL 2106464, at *3 (C.D. Cal. May 7, 2018) ("[A] prisoner [does not] have

23  a constitutional right to any particular grievance outcome"). Thus, Plaintiff's allegations against

24  Defendant Clark concerning the manner in which his grievances were handled, investigated, and

25  resolved (*see* Doc. 1 at 9-11) does not state a claim. *Ramirez*, 334 F.3d at 860; *see also*, *e.g*.,

26  *Towner v. Knowles*, No. CIV-S-08-2823 LKK EFB P, 2009 WL 4281999, at *2 (E.D. Cal. Nov.

27  20, 2009) (plaintiff failed to state claims that would indicate a deprivation of his federal rights

28  after defendant allegedly screened out his inmate appeals without any basis); *Williams v. Cate*,

1   No. 1:09-cv-00468-OWW-YNP PC, 2009 WL 3789597, at *6 (E.D. Cal. Nov. 10, 2009)

2   ("Plaintiff has no protected liberty interest in the vindication of his administrative claims").

3   Finally, because Plaintiff cannot state a claim on this basis, amendment would be futile.

4   *Hartmann*, 707 F.3d at 1130.

5          In sum, Plaintiff cannot state cognizable access to courts claims against Defendants Clark

6   and Peterson. Hence, his claims should be dismissed.

7                   **E.  Claim III: Retaliation Claim Against Defendant Peterson**

8          To the extent Plaintiff's third claim for relief was intended to assert a claim of retaliation

9   (Doc. 1 at 12 ["To engage in protected conduct as guaranteed by the First Amendment"]) against

10  Defendant Peterson, rather than one involving access to courts, that claim is considered below.

11         Prisoners have a First Amendment right to file prison grievances and retaliation against

12  prisoners for exercising this right is a constitutional violation. *Rhodes v. Robinson*, 408 F.3d 559,

13  566 (9th Cir. 2005); *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003). A claim for First

14  Amendment retaliation in the prison context requires: (1) that a state actor took some adverse

15  action against the plaintiff (2) because of (3) the plaintiff's protected conduct, and that such

16  action (4) chilled the plaintiff's exercise of his First Amendment rights, and (5) "the action did

17  not reasonably advance a legitimate correctional goal." *Rhodes*, 408 F.3d at 567-68; *Brodheim v.

18  Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). To prove the second element, retaliatory motive,

19  plaintiff must show that his protected activities were a "substantial" or "motivating" factor behind

20  the defendant's challenged conduct. *Brodheim*, 584 F.3d at 1269, 1271. Plaintiff must provide

21  direct or circumstantial evidence of defendant's alleged retaliatory motive; mere speculation is

22  not sufficient. *See McCollum v. CDCR*, 647 F.3d 870, 882–83 (9th Cir. 2011); accord, *Wood v.

23  Yordy*, 753 F.3d 899, 905 (9th Cir. 2014). In addition to demonstrating defendant's knowledge of

24  plaintiff's protected conduct, circumstantial evidence of motive may include: (1) proximity in

25  time between the protected conduct and the alleged retaliation; (2) defendant's expressed

26  opposition to the protected conduct; and (3) other evidence showing that defendant's reasons for

27  the challenged action were false or pretextual. *McCollum*, 647 F.3d at 882.

28  //

                                                    10

Plaintiff contends he filed a grievance against Defendants Clark, Peterson and Lirones on March 23, 2021, concerning "their actions that obstructed" his access to the court. (Doc. 1 at 13.) Plaintiff asserts that prior to receiving the decision dated May 6, 2021 (received on June 16, 2021) and before he could appeal, "Sgt. Cid" called him to the program office on May 15 or 16 to discuss the grievance. (*Id.* at 13, 15.) Cid handed Plaintiff a "Program Status Report for April 29, 2021" and asked Plaintiff "if that was what he requested" in the grievance. (*Id.* at 13.) Plaintiff informed Cid he "had requested PSRs for February through April" and Cid indicated an intent to "check and then get back to" Plaintiff. (*Id.* at 14.) Then, on May 17 or 18, Defendant Peterson questioned Plaintiff, in the dayroom, about the same grievance. (*Id.*) Peterson wanted to know if what Cid had provided to Plaintiff a day or two prior would "suffice." (*Id.*) Plaintiff informed Peterson it would not. (*Id.*) Plaintiff contends Peterson informed him that he (Peterson) "had read all of" Plaintiff's grievances. (*Id.*) Plaintiff states he "was not sure how to respond" and was "confused as to why defendant Peterson wanted to know if plaintiff believed he had a realistic chance of overturning his case." (*Id.*) When Plaintiff informed Peterson that he believed that he did have a realistic chance of having his case overturned, Peterson "abruptly wished" him good luck and told Plaintiff to come to his office "the next available yard." (*Id.*)

On May 20, 2021, rather than "being provided the PSRs for February through April that defendant Peterson had promised," Plaintiff "was rolled-up that morning before yard release, and sent to the hole without being told why." (*Id.* at 14-15.) Plaintiff contends the delay of his receipt of the grievance decision—where the grievance was decided May 16 and Plaintiff did not receive it until June 19—was "an attempt to prevent" Plaintiff from appealing the decision. (*Id.* at 15.) Plaintiff contends that placing him in ad-seg "did not advance a legitimate correctional goal" and "'no criminal activity nor rules violation report was generated'" following that placement. (*Id.*) Plaintiff further asserts that during his four years of incarceration, he has not incurred a single rules violation report, "other than a 128" for refusing a dental appointment and he does not have any enemies. (*Id.*) Nor does Plaintiff "'have a history of in-cell predatory or assaultive behavior towards inmates,'" undercutting "the baseless accusation that plaintiff was 'extorting inmates for their canteen on 4B.'" (*Id.* at 15-16.) Plaintiff states, "after the baseless accusation of extortion

and fabricated enemies per confidential memorandum dated 05/21/21 to Yard 3B, where it was even more difficult to gain access to law library than it had been on Yard 4B where it had been very difficult." (*Id*. at 16.) Plaintiff contends had he "not engaged in a hunger-strike" due to the false accusations, he would have remained in ad-seg "much longer or been transferred to another prison," resulting in a separation from his "legal material for additional weeks, if not months, heightening the possibility of legal material being lost and never returned, ending his litigation."

Liberally construing the complaint, Plaintiff has plausibly alleged that Defendant Peterson took an adverse action by placing him in ad-seg because Plaintiff filed a grievance against Defendants Lirones, Clark and Peterson concerning Plaintiff's access to the law library, and that Peterson's action chilled the excise of Plaintiff's First Amendment rights and did not advance a legitimate correctional goal. *Rhodes*, 408 F.3d at 567-68. Therefore, the undersigned recommends this action proceed as to Plaintiff's retaliation claim against Defendant Peterson.

*Remainder of This Page Intentionally Left Blank*

1        IV.        CONCLUSION AND RECOMMENDATION

2              Accordingly, for the reasons set forth above, the Court **RECOMMENDS** that:

3        1.   Defendants Ken Clark and Margaret Lirones be DISMISSED from this action; and,

4        2.   This action PROCEED *only* on Plaintiff's claim alleging a violation of his First

5              Amendment rights against Defendant Peterson for retaliation; all other claims and

6              defendants should be dismissed.

7              These Findings and Recommendations will be submitted to the United States District

8    Judge assigned to this case, pursuant to 28 U.S.C. § 636(b)(l). Within 14 days of the date of

9    service of these Findings and Recommendations, a party may file written objections with the

10   Court. The document should be captioned, "Objections to Magistrate Judge's Findings and

11   Recommendations." Failure to file objections within the specified time may result in waiver of

12   rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v.*

13   *Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

14   IT IS SO ORDERED.

15      Dated:   __**March 16, 2023**__                      _____

16                                                           UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26

27

28
                                                13