UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MICHAEL JACE,

Plaintiff,

v.

MARGARET LIRONES, et al.,

Defendants.

Case No.: 1:22-cv-00419-ADA-CDB (PC)

**ORDER DENYING IN PART AND GRANTING IN PART PLAINTIFF'S MOTION TO AMEND THE COMPLAINT**

(Doc. 57)

**ORDER STAYING DISCOVERY**

21-Day Deadline

Plaintiff Michael Jace is proceeding pro se and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. This action proceeds on Plaintiff's First Amendment retaliation claim against Defendant Peterson.

**I. BACKGROUND**

On August 30, 2023, the Court issued its Discovery and Scheduling Order. (Doc. 42.) Relevant here, the order provided a November 30, 2023 deadline for amending pleadings. (*Id.*)

On November 22, 2023, Plaintiff filed an Application for Extension of Time to Amend Pleadings. (Doc. 45.) Specifically, Plaintiff sought a 60-day extension of the deadline to amend pleadings, "to and including January 29, 2024." (*Id.*)

On December 18, 2023, Defendant filed an Ex Parte Application to Modify the Discovery

and Scheduling Order, seeking to extend the deadline for filing an exhaustion-based motion for summary judgment by 45 days. (Doc. 47.)

On December 19, 2023, the Court issued its Order Modifying the Discovery and Scheduling Order. (Doc. 48.) The deadline to amend pleadings was extended to January 29, 2024, and the deadline for the filing of an exhaustion motion was extended to February 13, 2024. (Doc. 48.)

On January 29, 2024, Plaintiff filed a "Motion to Leave to Amend Civil Rights Complaint by Prisoner" (Doc. 57) and lodged a first amended complaint (Doc. 58) with the Court. On February 20, 2024, Defendant filed an opposition to Plaintiff's motion to amend the complaint. (Doc. 59.)

## II. DISCUSSION

***Plaintiff's Motion***

The entirety of Plaintiff's motion reads as follows:

> Plaintiff respectfully request permission to leave to amend his 1983 civil rights complaint pursuant to Pouncil v. Tilton, 704 F.3d 568. "[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates."

(Doc. 57.)

***Summary of Plaintiff's Proposed First Amended Complaint***

A review of the lodged first amended complaint reveals Plaintiff names M. Lirones, K. Clark, A. Peterson, N. Scaife, and A. Cid as defendants. (Doc. 58 at 1.) Plaintiff presents four claims for relief: Claim 1 alleges violations of the First and Fourteenth Amendments against Senior Librarian Margaret Lirones in her individual and official capacities (*id*. at 2-6); Claim 2 alleges a violation of the First Amendment against Ken Clark as Warden of Corcoran State Prison and Lirones's supervisor in his individual and official capacities (*id*. at 7-9); Claim 3 alleges First Amendment retaliation claims against Defendants Peterson, Scaife and Cid in their individual and official capacities (*id*. at 10-17); and Claim 4 alleges "First Amendment rights to file grievances and access to the courts as well as Plaintiff's Fourteenth Amendment right of due process" against Defendants Peterson, Scaife and Cid in their individual and official capacities (*id*. at 18-21). The

proposed amended complaint does not indicate Plaintiff seeks monetary relief; rather, Plaintiff seeks declaratory relief only. (*See id.* at 6, 9, 17, 21.)

***Defendant's Opposition***

Defendant Peterson opposes Plaintiff's motion because (1) the Court dismissed Plaintiff's access to courts claims with prejudice, (2) Plaintiff unduly delayed seeking leave to amend, and (3) granting Plaintiff leave to amend would prejudice Defendant and cause further delay. (Doc. 59 at 1-2.) Specifically, Defendant argues this Court previously determined that amendment of Plaintiff's access to courts claims would be futile, citing to the Court's March 16, 2023, Findings and Recommendations to Dismiss Certain Claims and Defendants and noting the proposed first amended complaint "merely reasserts" Plaintiff's previous access to courts claims against Defendants Lirones, Clark, and Peterson, to include proposed defendants Cid and Scaife. (*Id*. at 3-4.) Defendant contends Plaintiff cannot show that such an amendment "would be nonfrivolous." (*Id*. at 4.) Next, Defendant argues Plaintiff unduly delayed seeking leave to amend because Plaintiff could have brought his claims against Cid and Scaife in his original complaint but chose not to do so. (*Id*.) Defendant contends that instead of amending his original complaint, "Plaintiff appealed the district court order dismissing Lirones and Clark, moved for reconsideration, and now appeals the denial of his motion for reconsideration," and "provides no explanation why this Court should permit him to add these claims now." (*Id*.) Defendant contends permitting Plaintiff to file the proposed first amended complaint, adding two new defendants and asserting claims "substantially similar to his original complaint," would substantially prejudice Defendant and cause undue delay where Defendant has answered the original complaint, responded to numerous discovery requests and has already deposed Plaintiff. (*Id*. at 4.) Defendant maintains that allowing Plaintiff to proceed on the proposed first amended complaint would require further screening by the Court and service of process on the new Defendants. (*Id*.) Additionally, a new answer would be required and "the parties will likely need to conduct new rounds of discovery," requiring extension of the discovery deadline presently set for April 30, 2024. (*Id*.) Defendant asserts expending "more costs defending this action because Plaintiff delayed amending his complaint" is also a basis to deny Plaintiff's motion. (*Id*.)

***The Applicable Legal Standards***

Under Rule 15(a) of the Federal Rules of Civil Procedure, a party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served. Fed. R. Civ. P. 15(a)(1). Otherwise, a party may amend only by leave of the court or by written consent of the adverse party, and leave shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2).

While courts exercise broad discretion in deciding whether to allow amendment, they generally have adopted a liberal policy. *AmerisourceBergen Corp. v. Dialysist West, Inc*., 465 F.3d 946, 951 (9th Cir. 2006); *Chodos v. W. Publ. Co*., 292 F.3d 992, 1003 (9th Cir. 2002) ("it is generally our policy to permit amendment with 'extreme liberality'") (citing *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir.1990)). "However, liberality in granting leave to amend is subject to several limitations. Those limitations include undue prejudice to the opposing party, bad faith by the movant, futility, and undue delay." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011) (citations & internal quotation marks omitted). "Courts may decline to grant leave to amend only if there is strong evidence of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, etc.'" *Sonoma Cty. Ass'n of Retired Employees v. Sonoma Cty*., 708 F.3d 1109, 1117 (9th Cir. 2013) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). In the Ninth Circuit, these factors are commonly referred to as the "*Foman* factors." *See Eminence Capital, LLC v. Aspeon, Inc*., 316 F.3d 1048, 1052 (9th Cir. 2003). The factors are not weighed equally. *Bonin v. Calderon,* 59 F.3d 815, 845 (9th Cir. 1995); *see Atkins v. Astrue*, No. C 10–0180 PJH, 2011 WL 1335607, at *3 (N.D. Cal. Apr. 7, 2011) (the five factors "need not all be considered in each case"). Undue delay, "by itself…is insufficient to justify denying a motion to amend." *Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir. 1999). On the other hand, futility of amendment and prejudice to the opposing party can, by themselves, justify the denial of a motion for leave to amend. *Bonin,* 59 F.3d at 845; *see Eminence Capital, LLC v. Aspeon, Inc*., 316 F.3d 1048, 1052 (9th Cir. 2003) (the consideration of prejudice to the opposing

party carries the greatest weight).

Granting or denying leave to amend rests in the sound discretion of the trial court and will be reversed only for abuse of discretion. *Swanson v. U.S. Forest Serv*., 87 F.3d 339, 343 (9th Cir. 1996).

***Analysis***

Initially, the Court addresses Plaintiff's reference to or reliance upon *Pouncil v. Tilton*, 704 F.3d 568 (9th Cir. 2012). (Doc. 57.) *Pouncil* did not concern Rule 15 or amendment of the plaintiff's complaint. Rather, the issue before the Ninth Circuit Court of Appeals was the statute of limitations to be applied to Pouncil's complaint asserting Religious Land Use and Institutionalized Persons Act (RLUIPA) and First Amendment claims. *Id*. at 570. The appellate court determined that because Pouncil's claims were "based on an independently wrongful, discrete act in 2008, the denial of his request for conjugal visits with his second wife, Pouncil's claims are not time-barred, notwithstanding the denial, pursuant to the same regulation, of his prior request for conjugal visits with his first wife in 2002." *Id*. at 583. *Pouncil* does not apply here, nor does it offer support for Plaintiff's motion in this action.

The Court now turns to its consideration of whether to grant Plaintiff leave to amend his complaint.

Futility of Amendment Legal Standards

"Leave to amend may be denied if the proposed amendment is futile or would be subject to dismissal." *Clarke v. Upton*, 703 F. Supp. 2d 1037, 1043 (E.D. Cal. 2010) (citing *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991)). Proposed amendments are futile if "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense," *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017), or when they "are either duplicative of existing claims or patently frivolous," *Murray v. Schriro*, 745 F.3d 984, 1015 (9th Cir. 2014). "However, denial on this ground is rare and courts generally defer consideration of challenges to the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed." *Clarke*, 703 F. Supp. 2d at 1043 (citing *Netbula, LLC v. Distinct Corp*., 212 F.R.D. 534, 539 (N.D. Cal. 2003)). "Leave to amend is

warranted if the deficiencies can be cured with additional allegations that are 'consistent with the challenged pleading' and that do not contradict the allegations in the original complaint." *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011); *see Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 701 (9th Cir. 1988) (noting that it is improper to deny leave to amend when the court can "'conceive of facts' that would render plaintiff's claim viable").

Futility of Amendment: Claims One and Two

As noted above, Defendant argues this Court previously determined that amendment of Plaintiff's access to courts claims would be futile, citing to the Court's March 16, 2023, Findings and Recommendations to Dismiss Certain Claims and Defendants and noting the proposed first amended complaint "merely reasserts" Plaintiff's previous access to courts claims against Defendants Lirones, Clark, and Peterson, to include proposed defendants Cid and Scaife. (Doc. 59 at 3-4.) Defendant contends Plaintiff cannot show that such an amendment "would be nonfrivolous." (*Id*. at 4.)

To be sure, this Court previously found Plaintiff failed to "show that his underlying anticipated or lost claim is 'nonfrivolous' and 'arguable'" as it concerned Plaintiff's access to courts claim against Defendant Lirones. (*Id*. at 4-6.) The Court took judicial notice of an action filed in the Central District, titled *Jace v. Davis*, Case No. 2:19-cv-03020-ODW-KES (*id*. at 7-9) and found "the Ninth Circuit has already ruled that Plaintiff's habeas corpus petition was properly denied by the Central District. Hence, any underlying anticipated or lost claim cannot be said to be nonfrivolous or arguable" (*id*. at 8).[1] The undersigned determined Plaintiff "failed to state a cognizable access to courts claim against Lirones and amendment would be futile" and recommended dismissal of the claim. (*Id*. at 9.) For those same reasons, the Court found Plaintiff's access to courts claims against Defendants Clark and Peterson were not cognizable and amendment would be futile, and recommended dismissal of these claims as well. (*Id*. at 9-10.) Despite Plaintiff's objections (Doc. 21), on April 7, 2023, then assigned Senior District Judge

[1] Plaintiff's petition for writ of certiorari was denied by the United States Supreme Court on February 21, 2023. *Jace v. Davis*, No. 22-6186, 143 S.Ct. 793 (Mem) (2023). The high court also denied rehearing April 17, 2023. *Jace v. Davis*, No. 22-6186, 143 S.Ct. 1778 (Mem) (2023).

Anthony W. Ishii adopted the Findings and Recommendations in full, dismissing Defendants Clark and Lirones from the action and permitting the action to proceed only on Plaintiff's First Amendment retaliation claim against Defendant Peterson. (*See* Doc. 23.) Plaintiff appealed the ruling to the Ninth Circuit Court of Appeals; however, the appeal was dismissed for a lack of jurisdiction on June 23, 2023. (Docs. 27 & 32.) On August 2, 2023, Plaintiff moved for reconsideration of the findings and recommendations. (Doc. 38.) On January 3, 2024, Chief Judge Kimberly J. Mueller denied Plaintiff's request for reconsideration. (Doc. 50.)

The proposed first amended complaint seeks to reassert First Amendment access to courts claims against two defendants—Clark and Lirones—previously dismissed from this action, and possibly to assert a First Amendment access to courts claim that was previously dismissed as to Defendant Peterson.[2] Granting Plaintiff leave to amend his complaint to assert those same or similar claims against Defendants Clark, Lirones, and/or Peterson would be futile. *See, e.g.*, *Barnett v. Cal. Dep't of Motor Vehicles*, No. 2:17-cv-01517-TLN-CKD (PS), 2023 WL 5817714, at *4 (E.D. Cal. Sept. 8, 2023), report and recommendation adopted by 2023 WL 6612272 (E.D. Cal. Oct. 10, 2023) ("Plaintiff's causes of action for intentional and negligent infliction of emotional distress were pleaded in the original complaint as the fifth claim for damages. [] These causes of action were dismissed without leave to amend. [] Amendment to add these proposed claims would be futile"); *Sharkey v. NaphCare, Inc.*, No. 2:18-cv-0025-KJD-BNW, 2019 WL 5864895, at *6 (D. Nev. Nov. 8, 2019) ("The minor changes Sharkey made to his proposed amended complaint do not cure the deficiencies in his original complaint, and even if they did, amendment would be futile. The proposed amendment attempts to revive Sharkey's failure to investigate claim against internal affairs officers that the Court already dismissed with prejudice"); *Alston v. County of Sacramento*, No. 2:18-cv-02420-TLN-CKD PS, 2019 WL 5773700, at *4 (E.D. Cal. Oct. 30, 2019) ("dismissing claims 'with prejudice' is an unequivocal

---

[2] It appears to the Court that the first two claims in Plaintiff's proposed amended complaint are directed to Defendants Lirones and Clark, respectively. Although the Court notes Plaintiff's reference in each claim's last paragraph to "defendant(s)," rather than the particular named defendant in the factual allegations associated with the claim. Thus, out of an abundance of caution, the Court will consider all named defendants for each claim to ensure clarity of this order.

ruling that any amendment is futile'"); *see also Boyd v. Mason*, No. 3:20-cv-02403, 2022 WL 19792952, at *4 (M.D. Pa. Dec. 20, 2022) ("The amended complaint reasserts § 1983 claims against defendants Mason, Stetler, Banda, Varner, and Mahally arising out of the inmate grievance process. These claims were previously dismissed with prejudice and without leave to amend, with the court finding that any amendment would be futile"); *Crenshaw v. Hamilton*, No. 08-CV-6186, 2012 WL 1565696, at *3 (W.D.N.Y. Mar. 30, 2012), report and recommendation adopted by 2012 WL 1565685 (W.D.N.Y. Apr. 30, 2012) (denying plaintiff's motion to amend as futile where the claims were "previously dismissed with prejudice or [were] so closely related to those dismissed claims that they were logically encompassed by [the judge's] rulings in this matter") (citing *Martin v. Engelman*, No. 1:10-CV-109, 2011 WL 2436127, at *2 (N.D. Ill. June 15, 2011) [plaintiff's proposed amended complaint deemed futile where it "attempts to resurrect a plethora of claims that were previously dismissed by the District Judge"]).

To the extent the first amended complaint seeks to assert First Amendment access to courts claims against Defendants Cid and Scaife, for the same reasons given above, granting Plaintiff leave to amend would be futile.

In sum, given its prior analysis of the same claims and finding dismissal warranted, this Court concludes that granting Plaintiff leave to file a first amended complaint asserting First Amendment access to courts claims against any defendant named in the proposed amended complaint would be futile. *Clarke*, 703 F. Supp. 2d at 1043; *Bonin*, 59 F.3d at 845.

Futility of Amendment: Claim Three

As noted above, Claim 3 in the proposed first amended complaint alleges First Amendment retaliation claims against Defendants Peterson, Scaife and Cid in their individual and official capacities. (Doc. 58 at 10-17.)

At present, this action proceeds against Defendant Peterson only on a First Amendment retaliation claim. The proposed first amended complaint seeks to assert that same claim against Defendants Scaife and Cid, in addition to Peterson.

*Claim 3 Factual Allegations*

The proposed first amended complaint alleges that on March 23, 2021, Plaintiff filed

grievance log number 104888 concerning Clark, Peterson and Lirones for obstructing his access to the courts. (Doc. 58 at 10.) Plaintiff asserts he also filed grievance log number 114596, contending policies implemented by Clark and Peterson violated sections 3123(b) and 3160(a) of Title 15 of the California Code of Regulations. (*Id*.) Plaintiff alleges that prior to his receipt of the decision in log number 1044888 and before Plaintiff could file an appeal, Defendant Cid called him to the program office on May 15 or 16, 2021, to discuss the grievances. (*Id*. at 10-11.) When Cid asked Plaintiff whether a program status report ("PSR") dated April 29, 2021 covered his request in the grievance, Plaintiff advised Cid he "requested PSRs for February through April." (*Id*. at 11.) Cid replied he would check and get back to Plaintiff. (*Id*.) A day or two later, Defendant Peterson inquired about the same issue. (*Id*.) Plaintiff advised Peterson the April 29, 2021 PSR would not suffice and that "he needed PSRs from February through April to prove to the courts that it was not his fault that he had missed the deadlines to file a timely appeal to have his Federal Habeas Corpus reviewed by a Federal Appellate Court." (*Id*.) Plaintiff states Peterson advised him that he had read all of Plaintiff's grievances and Plaintiff states was confused by Peterson's inquiry to Plaintiff about whether Plaintiff believed he had a realistic chance of overturning his case. (*Id*. at 11-12.) Plaintiff contends Peterson then told Plaintiff to come to his office "the next available yard and he'd have the PSRs ready." (*Id*. at 12.)

Instead of being provided the PSRs, Plaintiff alleges "he was rolled-up that morning before yard release, and sent to the hole without being told why." (*Id*.) Plaintiff asserts grievance log number 104888 was denied on May 6, 2021, was not delivered to Plaintiff until June 19, 2021, and that there was no legitimate reason for it not to be delivered prior to Plaintiff's removal from the yard on May 20, 2021. (*Id*.) Plaintiff contends the "delay was an attempt to prevent [him] from appealing the decision for said grievance and defendants hide their wrong-doing." (*Id*.) He contends placing him in "Ad-Seg did not advance a legitimate correctional goal" and that "[p]er the Classification Committee Chrono, 'no criminal activity or rules violation report was generated.'" (*Id*. at 12-13.) Plaintiff contends that the chrono "that was readily available to defendants Cid, Scaife and Peterson" prior to his being placed in Ad-Seg indicated Plaintiff "'does not have a history of in-cell predatory or assaultive behavior towards inmates.'" (*Id*. at 13.)

He avers that "fact completely undercuts the baseless accusation that [he] was extorting inmates for their canteen.'" (*Id.*) Plaintiff alleges it "would have been far less intrusive and effective" to have placed "the alleged 'victim' … in Ad-Seg" rather than Plaintiff "and alleged co-defendants." (*Id.*) Plaintiff maintains that while it may be argued there was some evidence to support his initial placement in Ad-Seg, it was a "rumor" and "considering the highly charged atmosphere of prison, there does not appear to be enough evidence" for his having remained there from May 20 through May 28, 2021, "if the investigation into [his] alleged 'extortion' was concluded by May 20, 2021." (*Id.* at 13-14.) Plaintiff contends that on "information and belief, the sole basis" for his Ad-Seg placement was a confidential memo authored by Defendant Cid and authorized by Defendant Scaife. (*Id.* at 14.) Plaintiff states it "is not conclusively clear" from the chrono that the investigation concluded on May 20, 2021 and that he has "not received any documents that were requested." (*Id.*) Plaintiff contends that considering his past disciplinary record, lack of gang association, and a lack of diligence by Defendant Scaife, he should not have been held in Ad-Seg "an additional seven days, from May 21, 2021 to May 27, 2021." (*Id.*) Plaintiff alleges "there is absolutely no basis" for Peterson's authorizing Cid's confidential memo to be placed in Plaintiff's C-file because the investigation had concluded and Peterson knew or should have known Plaintiff had no enemies and had never been involved in gang activity. (*Id.* at 14-15.) He states "[w]hatever is contained in the 05/20/21 confidential memo cannot meet the standard of evidence presented in Cato v. Rushen, 824 F.2d 703 and that was not sufficient." (*Id.* at 15.)

Plaintiff states he was removed from the "yard 4B after the baseless accusation of extortion and fabricated enemies per the confidential memorandum to yard 3B where it was even more difficult to gain access to law library." (*Id.*) Plaintiff contends that had he not engaged in a hunger strike after being falsely accused, he would have remained in Ad-Seg "much longer or been transferred to another prison." (*Id.*) Either outcome resulted in his being separated from his legal materials "for additional weeks, if not months, heightening the possibility of the legal material being lost and never returned, ending his litigation." (*Id.*) Plaintiff questions Defendant Peterson's truthfulness based upon his answer to Plaintiff's original complaint and an interrogatory. (*Id.* at 15-16.) Plaintiff contends that because of "defendant's reckless and

deliberate placement of that confidential memo in [his] C-file, plaintiff is now subject to the arbitrary and capricious actions of Corcoran prison where they use that confidential memo as a basis for a valid penological purpose when none exists" and "but for Peterson's act of retaliation" the memo would not be in the C-file and that "[t]here is no basis pursuant to Cato." (*Id*. at 16.)

Plaintiff also contends he was subject to a cell and strip-search for illegal drugs because of that memo but asserts he has never used or purchased illegal drugs at any point during his incarceration, nor has he sold illegal drugs. (*Id*.) Plaintiff alleges "[f]urther proof of Peterson's" retaliatory conduct involves the fact "no 115 generated" for extortion, that Peterson asserted in his answer that he was not aware Plaintiff had any enemies, contradicting his statement during the investigation that Plaintiff had an "'enemy concern.'" (*Id*. at 16-17.) Plaintiff contends he will be irreparably injured unless the Court "grants the declaratory relief which plaintiff seeks." (*Id*. at 17.) Plaintiff requests the Court order the prison "to remove the confidential memo from his C-file because it is a grave danger to his liberty." (*Id*.) Plaintiff states he "has been appointed a lawyer for a 1172.6 Resentencing Hearing and that confidential memo that is not credible will due [him] grave harm." (*Id*.)

*The Applicable Legal Standards*

Prisoners have a First Amendment right to file prison grievances and retaliation against prisoners for exercising this right is a constitutional violation. *Rhodes v. Robinson*, 408 F.3d 559, 566 (9th Cir. 2005). A claim for First Amendment retaliation in the prison context requires: (1) that a state actor took some adverse action against the plaintiff (2) because of (3) the plaintiff's protected conduct, that such action (4) chilled the plaintiff's exercise of his First Amendment rights, and (5) "the action did not reasonably advance a legitimate correctional goal." *Id.* at 567-68. To prove the second element, retaliatory motive, plaintiff must show that his protected activities were a "substantial" or "motivating" factor behind the defendant's challenged conduct. *Brodheim v. Cry*, 584 F.3d 1262, 1269, 1271 (9th Cir. 2009). Plaintiff must provide direct or circumstantial evidence of defendant's alleged retaliatory motive; mere speculation is not sufficient. *See McCollum v. CDCR*, 647 F.3d 870, 882–83 (9th Cir. 2011); accord *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014). In addition to demonstrating defendant's knowledge of

plaintiff's protected conduct, circumstantial evidence of motive may include: (1) proximity in time between the protected conduct and the alleged retaliation; (2) defendant's expressed opposition to the protected conduct; and (3) other evidence showing that defendant's reasons for the challenged action were false or pretextual. *McCollum*, 647 F.3d at 882.

*Discussion*

The proposed first amended complaint, like Plaintiff's original complaint, plausibly alleges a First Amendment retaliation claim against Defendant Peterson. However, it fails to plausibly allege Defendants Cid or Scaife took action to prevent Plaintiff from filing an appeal of grievance log number 108444. This is so because Plaintiff's allegations are merely speculative even considering the proximity in time. *McCollum*, 647 F.3d at 882-83. Moreover, Plaintiff does not allege his protected activities were a substantial or motivating factor behind Cid or Scaife's conduct. *Brodheim*, 584 F.3d at 1271. No facts indicate Cid or Scaife expressed opposition to Plaintiff's grievances; in fact, Plaintiff alleges Cid indicated he would get back to Plaintiff about the PSRs he sought as a part of his grievance. Further, the facts alleged as to Scaife concern his purported authorization of the Ad Seg placement and a lack of diligence; those facts are insufficient for purposes of alleging retaliatory conduct. In sum, Plaintiff fails to plausibly allege First Amendment retaliation claims against Defendants Cid or Scaife in the proposed first amended complaint.

Nevertheless, the Court cannot find amendment as to this claim would be futile because it is possible Plaintiff could cure the deficiencies identified herein. *Corinthian Colls*., 655 F.3d at 995.

Futility of Amendment: Claim Four

Claim 4 in the proposed first amended complaint alleges "First Amendment rights to file grievances and access to the courts as well as Plaintiff's Fourteenth Amendment right of due process" against Defendants Peterson, Scaife and Cid in their individual and official capacities. (Doc. 58 at 18-21). The Court has already determined futility concerning any First Amendment access to courts claims against any defendant. Thus, the undersigned considers Plaintiff's Fourteenth Amendment due process claims against any named defendant.

*Claim Four Factual Allegations*

Plaintiff alleges Defendants Peterson, Scaife and Cid "conspired against" him to deny him his due process rights. (Doc. 58 at 18.) Plaintiff contends that prior to being placed in Ad-Seg on May 20, 2021, he was held in the program office while Defendant Cid prepared placement paperwork. (*Id*.) He alleges that Defendant Cid "repeatedly and loudly declared, either, 'I don't give a fuck!' or 'I don't give a shit!'" (*Id*.) These statements were overheard by and can be confirmed by "Lt. J. Espinoza and I/M Johnathan Wymms." (*Id*.) Plaintiff asserts the statements by Cid speak "to his recklessness and callous indifference of his depriving" Plaintiff of his constitutional rights. (*Id*. at 18-19.)

Plaintiff contends that on May 21, 2021, Defendant Scaife signed "Part B of the Administrative Segregation Unit Placement Notice." (*Id.* at 19.) Next, Plaintiff states that it was not until October 13, 2021, that he realized there were two Ad-Seg placement notices in his C-file; one was missing a captain's name and signature and the other bore the name and signature of Defendant Scaife. (*Id.*) Plaintiff states the "question is when was this notice of Ad-Seg Placement placed in [his] C-file?" (*Id*.) He contends the "date it was placed in SOMS and who placed it there is easily traced." (*Id*.) If it was placed before May 27, 2021 "that could point to Defendant Scaife not being a part of the conspiracy complaint," but if it was placed after May 27, 2021, "that would be indication of" Scaife's "involvement in the conspiracy" to deprive Plaintiff of his constitutional rights. (*Id*.)

Plaintiff contends that Defendants Cid and Peterson's questioning of him about "PSRs is unlikely to have occurred without an agreement on either May 15 or May 16, 2021. (*Id*. at 19-20.) He maintains it "should be noted that though [he] requested production of PSRs February through April for this case he has not received any PSRs pursuant to that request." (*Id*. at 20.) Plaintiff attaches "a copy of the PSR" provided by Defendant Cid on May 15 or 16, 2021 "to avoid any future confusion as to show the document came" to be in his possession. (*Id*.) Plaintiff asserts that "pursuant to Cato," the date Defendant Peterson placed Defendant Cid's confidential memo in his C-file "is of issue." (*Id*.) Plaintiff alleges Defendant Peterson "had plenty of time to ascertain the validity of the false accusations against" him and the investigation had closed. (*Id*.) Plaintiff

asserts either Defendant Peterson never spoke to Defendant Cid as claimed, or Peterson placed the "deficient confidential memo" in Plaintiff's C-file "without verifying its content, which attest to his reckless and deliberate indifference of" Plaintiff's constitutional rights "as well as his failure to supervise his subordinates." (*Id*.) Alternatively, Plaintiff alleges that if Peterson did speak with Cid prior to placing the memo in Plaintiff's C-file, that indicates Peterson "has perjured himself asserting he never spoke" with Cid between April 23, 2020 and "the date he answered" Plaintiff's first set of interrogatories "and it speaks to him having conspired with" Cid to deprive Plaintiff of his constitutional rights. (*Id*. at 20-21.) Plaintiff contends he has been and will continue to be irreparably injured by "the defendants unless this court grants the declaratory relief" he seeks. (*Id*. at 21.)

*The Applicable Legal Standards*

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. *Hewitt v. Helms*, 459 U.S. 460, 466 (1983).

A prisoner does not have a right to a particular classification or custody level under the Due Process Clause. *See Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007) (concluding California prisoner does not have liberty interest in residing at a level III prison as opposed to level IV prison). Prisoners do not have a liberty interest in remaining housed in the general prison population. *Hernandez v. Constable*, No. 2:19-cv-2195 MCE DB P, 2020 WL 2145387, at *2 (E.D. Cal. Feb. 21, 2020), report and recommendation adopted, 2020 WL 2126893 (E.D. Cal. May 5, 2020) (citing *Smith v Noonan*, 992 F.3d 987, 989 (9th Cir. 1993); *McFarland v. Cassady*, 779 F.2d 1426, (9th Cir. 1986)).

"Typically, administrative segregation in and of itself does not implicate a protected liberty interest." *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003); *see Sandin v. Connor*, 515 U.S. at 472, 486 (discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest). "[W]hen

prison officials initially determine whether a prisoner is to be segregated for administrative reasons due process only requires the following procedures: Prison officials must hold an informal nonadversary hearing within a reasonable time after the prisoner is segregated. The prison officials must inform the prisoner of the charges against the prisoner or their reasons for considering segregation. Prison officials must allow the prisoner to present his views." *Toussaint v. McCarthy*, 801 F.2d 1080, 1100-01 (9th Cir. 1986) (footnote omitted), abrogated on other grounds, *Sandin*, 515 U.S. 472. For an administrative decision, due process requires that prison officials hold an informal non-adversary hearing within a reasonable time after the prisoner is segregated, inform the prisoner of the reason segregation is being considered, and allow the prisoner to present his views. *Id.* at 1100, 1104-05. The hardship associated with administrative segregation, such as loss of recreational and rehabilitative programs or confinement to one's cell for a lengthy period of time, is not so severe as to violate the Due Process Clause itself. *Id*. at 1091-92.

Disciplinary segregation requires more process. Disciplinary segregation as punishment for violation of jail rules and regulations cannot be imposed without complying with the procedural requirements of *Wolff*. "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556.

With respect to prison disciplinary proceedings, the minimum procedural requirements that must be met are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. *Id*. at 563-71. As long as the five minimum *Wolff* requirements are met, due process has been satisfied. *Walker v. Sumner*, 14 F.3d 1415, 1420 (9th Cir. 1994), abrogated on other grounds by *Sandin*, 515 U.S. 472. In addition, "some evidence" must support the decision

of the hearing officer, *Superintendent v. Hill*, 472 U.S. 445, 455 (1985), and the evidence must have some indicia of reliability, *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987). The "some evidence" standard is not particularly stringent, and the relevant inquiry is whether "there is any evidence in the record that could support the conclusion reached ...." *Hill*, 472 U.S. at 455-56.

*Discussion*

Here, Plaintiff's proposed due process claim concerns his placement in Ad Seg rather than disciplinary segregation proceedings where *Cato* would apply. Moreover, Plaintiff fails to specifically allege what process, when and by whom, was given to him concerning his placement in Ad Seg. Plaintiff cannot state a claim for relief if he was provided all the necessary procedural protections and instead simply disagrees with the result. To the extent Plaintiff's proposed amended complaint asserts there was a due process violation simply for his having been falsely accused, relief is not warranted on that basis. *Hernandez*, 833 F.2d at 1319; *see Hines v. Gomez*, 108 F.3d 265, 268-69 (9th Cir. 1997) (declining to extend the "some evidence" standard to a prison officer's initial accusation of a rule violation). In sum, Plaintiff fails to plausibly allege a due process claim against any defendant named in the proposed first amended complaint.

Nevertheless, the Court cannot find amendment as to this claim would be futile because it is possible Plaintiff could cure the deficiencies identified herein. *Corinthian Colls*., 655 F.3d at 995.

<u>Undue Delay</u>

Defendant contends Plaintiff unduly delayed in seeking leave to amend his complaint. (Doc. 59 at 4.) Defendant contends the claims against Cid and Scaife are based on events that occurred in May 2021, almost one year prior to the filing of Plaintiff's original complaint. (*Id*.) Thus, Defendant argues, Plaintiff could have brought the claims asserted in his proposed first amended complaint in his original complaint. (*Id*.)

"Undue delay is delay that prejudices the nonmoving party or imposes unwarranted burdens on the court." *BNSF Ry. Co. v. San Joaquin Valley R.R. Co.*, No. 1:08-cv-01086-AWI-SMS, 2011 WL 3328398, at *2 (E.D. Cal. Aug. 2, 2011) (citing *Mayeaux v. La. Health Serv. and Indem. Co*., 376 F.3d 420, 427 (5th Cir. 2004)). Undue delay addresses not only whether the

motion was filed within the time allotted, but also "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *AmerisourceBergen*, 465 F.3d at 953; *see Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990) (denying leave to amend where, among other things, plaintiffs did not cite any facts or theories supporting their argument that they did not have important evidence until after additional discovery completed). For example, the Ninth Circuit has held that "an eight month delay between the time of obtaining a relevant fact and seeking a leave to amend is unreasonable." *AmerisourceBergen*, 465 F.3d at 953 (citing *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 799 (9th Cir. 1991)). "Undue delay by itself is insufficient to justify denying leave to amend." *United States v. United Healthcare Ins. Co*., 848 F.3d 1161, 1184 (9th Cir. 2016).

Here, the Court finds Plaintiff did not unduly delay because his motion was brought prior to the deadline imposed for amending pleadings. And, although it can be fairly argued Plaintiff knew or should have known of the relevant facts pertaining to Defendants Cid and Scaife, Plaintiff's proposed amended complaint refers to learning new facts concerning his Ad Seg placement on October 13, 2023.

Prejudice to Defendant

Defendant argues he will suffer substantial prejudice should Plaintiff's motion be granted because it adds two new defendants, Defendant has already responded to numerous discovery requests and has taken Plaintiff's deposition. (Doc. 59 at 4.) Allowing Plaintiff to amend his complaint will require another answer by the Defendants, screening of the first amended complaint, extension of the discovery deadline, and the expending of additional costs for defense of the action. (*Id.*)

Typically, "a court evaluates prejudice in terms of, e.g., whether discovery cut-offs have passed, how close trial is, and so forth." *Yates v. Auto City 76*, 299 F.R.D. 611, 614 (N.D. Cal. 2013).

Here, the current discovery deadline is April 30, 2024. (Doc. 42.) Further, this action has not been set for trial. Notably too, the case is presently assigned to the "NODJ" docket, making it unlikely that a trial will be set in the near future. While the Court appreciates the inconvenience to

Defendant of having to potentially engage in further written discovery and the potential for a second deposition of Plaintiff, weighing all factors, the Court findings the prejudice to Defendant to be less substantial than necessary to deny Plaintiff some leave to amend.

***Summary of the Court's Consideration***

In sum, this Court finds Plaintiff's motion for leave to file a first amended complaint should be denied in part and granted in part. Plaintiff may not assert any claims against Defendants Clark and Lirones as those individuals were dismissed from this action. Plaintiff's motion will be denied as it relates to any First Amendment access to courts claim, against any defendant, because amendment of those claims would be futile. Plaintiff's motion will be granted as it relates to First Amendment retaliation claims (Claim Three) and Fourteenth Amendment procedural due process claims (Claim Four) against Defendants Cid, Peterson and Scaife.

Plaintiff will be granted leave to file a second amended complaint asserting *only* his First Amendment retaliation claims and Fourteenth Amendment due process claims against Defendants Cid, Peterson, Scaife, to the extent he can do so in good faith. Any second amended complaint will be subject to screening pursuant to 28 U.S.C. § 1915A(a).

Plaintiff is advised that any amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, *Iqbal*, 556 U.S. at 678-79. Although accepted as true, the "[f]actual allegation must be [sufficient] to raise a right to relief above the speculative level …." *Twombly*, 550 U.S. at 555 (citations omitted). Further, the amended complaint shall be no longer than a total of 25 pages, including the text and any exhibits. Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints). And any amended complaint supersedes the original complaint. *Lacey v. Maricopa Cty.*, 693 F.3d 896, 927 (9th Cir. 2012). Therefore, any second amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220.

## III. CONCLUSION AND ORDER

For the reasons given above, **IT IS HEREBY ORDERED** that:

1. Plaintiff's motion for leave to amend (Doc. 57) is **DENIED IN PART** and **GRANTED IN PART**;
2. Plaintiff is **DENIED** leave to amend his complaint to assert any claims against Defendants Lirones and Clark and any First Amendment access to courts claims against any defendant;
3. Plaintiff is **GRANTED** leave to file a second amended complaint asserting his First Amendment retaliation claims and Fourteenth Amendment due process claims against Defendants Cid, Peterson and Scaife;
4. Plaintiff **SHALL** file any second amended complaint **within 21 days** of the date of service of this order. Any second amended complaint will be screened in due course;
5. If Plaintiff does not file a second amended complaint within 21 days of the date of service of this order, the operative complaint will remain his original complaint and the case will proceed only on Plaintiff's First Amendment retaliation claim against Defendant Peterson as alleged in the original complaint; and
6. The Discovery and Scheduling Order (Doc. 42) issued August 30, 2023, is **WITHDRAWN**. Discovery is stayed until the Court reissues a Discovery and Scheduling Order following screening of any second amended complaint and the filing of responsive pleadings.

IT IS SO ORDERED.

Dated: **March 6, 2024**

UNITED STATES MAGISTRATE JUDGE