1

2

3

4

5

6

7

8                         UNITED STATES DISTRICT COURT

9                         EASTERN DISTRICT OF CALIFORNIA

10

11    MICHAEL JACE,                              Case No.: 1:22-cv-00419-KES-CDB (PC)

12              Plaintiff,                        **FINDINGS AND RECOMMENDATIONS TO
                                                  DISMISS CERTAIN CLAIMS FOLLOWING**
13         v.                                     **SCREENING OF PLAINTIFF'S SECOND
                                                  AMENDED COMPLAINT**
14    MARGARET LIRONES, et al.,
                                                  (Docs. 68, 71)
15              Defendants.
                                                  **14-DAY OBJECTION PERIOD**
16

17         Plaintiff Michael Jace is proceeding pro se and *in forma pauperis* in this civil rights action

18    pursuant to 42 U.S.C. section 1983. The action currently proceeds on Plaintiff's First Amendment

19    retaliation claim against Defendant Peterson.

20         **I.      RELEVANT BACKGROUND**

21         On March 7, 2024, the Court issued its Order Denying in Part and Granting in Part

22    Plaintiff's Motion to Amend the Complaint. (Doc. 61.) Specifically, Plaintiff was denied leave to

23    amend his complaint to assert "any claims against Defendants Lirones and Clark and First

24    Amendment access to courts claims against any defendant" and was granted "leave to file a

25    second amended complaint asserting his First Amendment retaliation claims and Fourteenth

26    Amendment due process claims against Defendants Cid, Peterson and Scaife." (*Id.* at 19.)

27    Plaintiff was advised that in the event he did not file a second amended complaint within 21 days,

28    "the operative complaint will remain his original complaint and the case will proceed only on

Plaintiff's First Amendment retaliation claim against Defendant Person as alleged in the original complaint." (*Id.*)

On March 18, 2024, Plaintiff filed a Notice of Appeal concerning the Court's March 7, 2024, order.[1] (Doc. 63.) That same date, the appeal was processed to the Ninth Circuit Court of Appeals and assigned case number 24-1742. (Doc. 64.)

On March 25, 2024, Plaintiff filed a document titled "Motion to Certify an Interlocutory Appeal." (Doc. 66.)[2]

On April 2, 2024, Plaintiff filed a second amended complaint. (Doc. 68.)

The Ninth Circuit Court of Appeals dismissed the appeal for a lack of jurisdiction on April 29, 2024. (Doc. 69.) Its mandate issued on May 21, 2024. (Doc. 70.)

On June 7, 2024, Defendant Peterson filed a request for screening. (Doc. 71.)

## II.    SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). The Court should dismiss a complaint if it lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

## III.    PLEADING REQUIREMENTS

### A.  Federal Rule of Civil Procedure 8(a)

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). A complaint must contain "a short and plain statement of the claims showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the

---

[1] Plaintiff's notice was signed and dated March 13, 2024. 28 U.S.C. § 1292(b) (a request for interlocutory certification of a legal question must be made within ten days after entry of the challenged order).

[2] This motion remains pending before District Judge Kirk E. Sherriff.

1  plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512 (internal

2  quotation marks & citation omitted).

3        Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a

4  cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556

5  U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must

6  set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"

7  *Id*. (quoting *Twombly*, 550 U.S. at 570). Factual allegations are accepted as true, but legal

8  conclusions are not. *Id*. (citing *Twombly*, 550 U.S. at 555).

9        The Court construes pleadings of pro se prisoners liberally and affords them the benefit of

10  any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). However, "the

11  liberal pleading standard . . . applies only to a plaintiff's factual allegations," not his legal

12  theories. *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). Furthermore, "a liberal interpretation

13  of a civil rights complaint may not supply essential elements of the claim that were not initially

14  pled," *Bruns v. Nat'l Credit Union Admin*., 122 F.3d 1251, 1257 (9th Cir. 1997) (internal

15  quotation marks & citation omitted), and courts "are not required to indulge unwarranted

16  inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation

17  marks & citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not

18  sufficient to state a cognizable claim, and "facts that are merely consistent with a defendant's

19  liability" fall short. *Iqbal*, 556 U.S. at 678 (internal quotation marks & citation omitted).

20                    **B.  Linkage and Causation**

21        Section 1983 provides a cause of action for the violation of constitutional or other federal

22  rights by persons acting under color of state law. *See* 42 U.S.C. § 1983. To state a claim under

23  section 1983, a plaintiff must show a causal connection or link between the actions of the

24  defendants and the deprivation alleged to have been suffered by the plaintiff. *See Rizzo v. Goode*,

25  423 U.S. 362, 373-75 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the

26  deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative

27  act, participates in another's affirmative acts, or omits to perform an act which he is legal required

28  to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740,

1    743 (9th Cir. 1978) (citation omitted).

2                        **C. Supervisory Liability**

3            Liability may not be imposed on supervisory personnel for the actions or omissions of

4    their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676-77; *see e.g.,*

5    *Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1020-21 (9th Cir. 2010) (plaintiff required to

6    adduce evidence the named supervisory defendants "themselves acted or failed to act

7    unconstitutionally, not merely that subordinate did"), *overruled on other grounds by Castro v.*

8    *Cnty. of Los Angeles,* 833 F.3d 1060, 1070 (9th Cir. 2016); *Jones v. Williams,* 297 F.3d 930, 934

9    (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section

10   1983 there must be a showing of personal participation in the alleged rights deprivation: there is

11   no respondeat superior liability under section 1983").

12           Supervisors may be held liable only if they "participated in or directed the violations, or

13   knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th

14   Cir. 1989). "The requisite causal connection may be established when an official sets in motion a

15   'series of acts by others which the actor knows or reasonably should know would cause others to

16   inflict' constitutional harms." *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009).  Accord

17   *Starr v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir. 2011) (supervisory liability may be based on

18   inaction in the training and supervision of subordinates).

19           Supervisory liability may also exist without any personal participation if the official

20   implemented "a policy so deficient that the policy itself is a repudiation of the constitutional

21   rights and is the moving force of the constitutional violation." *Redman v. Cnty. of San Diego*, 942

22   F.2d 1435, 1446 (9th Cir. 1991) (citations & quotations marks omitted), *abrogated on other*

23   *grounds by Farmer v. Brennan*, 511 U.S. 825 (1970).

24           To prove liability for an action or policy, the plaintiff "must ... demonstrate that his

25   deprivation resulted from an official policy or custom established by a ... policymaker possessed

26   with final authority to establish that policy." *Waggy v. Spokane Cnty. Washington*, 594 F.3d 707,

27   713 (9th Cir.2010). When a defendant holds a supervisory position, the causal link between such

28   defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v.*

                                                       4

*Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

### IV.    DISCUSSION

#### A.  Plaintiff's Second Amended Complaint

Plaintiff prefaces his second amended complaint by asserting he "does not forfeit" his claims—labeled "Claim I" and "Claim II"— against Lirones and Clark.[3] (Doc. 68 at 2.) Because Plaintiff's second amended complaint was filed while his interlocutory appeal was pending before the Ninth Circuit Court of Appeals but which appeal since has been dismissed for a lack of jurisdiction,[4] the Court will include below any facts pertaining to Lirones or Clark—who are no longer defendants in this action—to provide necessary context.

#### B.  Plaintiff's Claims

##### First Amendment Retaliation

Beginning under the title "Claim III," Plaintiff identifies Captains A. Peterson and N. Scaife and Sergeant A. Cid, all employed as California State Prison-Corcoran, as Defendants. (Doc. 68 at 2.) Plaintiff asserts he is suing these individuals in their individual and official capacities. (*Id*. at 3.)

Plaintiff alleges Peterson, Scaife, and Cid retaliated against him when Plaintiff engaged in protective conduct guaranteed by the First Amendment. (*Id*. at 2-3.) He further asserts the Defendants denied his right to Fourteenth Amendment due process by relying on information they knew, or should have known, was false, to place Plaintiff in administrative segregation. (*Id*. at 3.)

Specifically, Plaintiff contends that on March 23, 2021, he filed grievance number 104888 against Defendant Peterson, as well as Lirones and Clark, for obstructing his access to the courts. He filed an additional grievance, number 114596, against Defendant Peterson and Clark, alleging

---

[3] Lirones is a senior librarian, and Clark is the warden at California State Prison-Corcoran.

[4] Lirones and Clark were dismissed from this action on April 7, 2023. (Doc. 23.) Plaintiff appealed the order dismissing Lirones and Clark, however, the appeal was dismissed for a lack of jurisdiction on June 2, 2023, in case number 23-15586. (Doc. 32.)

1   policies they implemented denied Plaintiff access to the courts. (*Id.*)

2        Plaintiff asserts that before he received the decision related to grievance number 104888

3   and before he could appeal it, Defendant Cid called Plaintiff to the program office on May 15 or

4   May 16, 2021, to discuss Plaintiff's grievances. (Doc. 68 at 4.) During that meeting, Plaintiff

5   alleges Cid handed Plaintiff a Program Status Report (PSR) dated April 29, 2021, then asked

6   Plaintiff "if that was what he requested in his grievances." (*Id.*) When Plaintiff informed Cid that

7   he had requested PSRs "for February through April," Cid replied that he would check and get

8   back to Plaintiff. (*Id.*) About a day later, Defendant Peterson approached Plaintiff's cell to

9   question Plaintiff about the same issue. (*Id.*) Plaintiff states that a "Captain coming to an inmate's

10  cell is extremely unusual." (*Id.*) Plaintiff contends Peterson wanted to know if the April 29, 2021,

11  PSR provided by Cid was sufficient. (*Id.*) Plaintiff explained to Peterson it was not sufficient

12  because Plaintiff needed PSR from February through April "to prove to the courts that it was not

13  his fault that he missed the deadline to file a timely appeal to have his Federal Habeas petition

14  reviewed by a Federal Appellate Court." (*Id.* at 4-5.)

15       Next, Plaintiff asserts that Defendant Peterson informed Plaintiff that he had read all of

16  Plaintiff's grievances. (Doc. 68 at 5.) Plaintiff was unsure how to respond and was confused

17  about why Peterson wanted to know whether Plaintiff believed he had a realistic chance of

18  prevailing. (*Id.*) When Plaintiff informed Peterson he did believe he had a realistic chance of

19  "having his case overturned," Peterson abruptly wished him luck and told Plaintiff to come to his

20  office "the next available yard" for the PSRs. (*Id.*) Plaintiff states his next available yard "would

21  have been May 20, 2021." (*Id.*) On May 20, 2021, however, instead of being provided the PSRs

22  at issue, Plaintiff contends he "was rolled-up that morning before yard release, and sent to the

23  hole without being told why." (*Id.*) Plaintiff alleges: "This is based solely on a confidential kite

24  that the institution received on May 19, 2021." (*Id.*)

25       Plaintiff further alleges that on May 20, 2021, Defendant Peterson "authorized the

26  confidential memo that defendant Cid manufactured to be placed in" Plaintiff's C-file. (Doc. 68 at

27  5-6.) Plaintiff contends he should not have been placed in administrative segregation and that the

28  placement occurred despite the fact Defendants Peterson and Cid knew, or should have known,

that the allegations in the "confidential kite" were false, "had they done their due diligence." (*Id.* at 6.)

Plaintiff maintains that Defendant Peterson "has been forced to admit that he knows of no enemy concerns" concerning Plaintiff. (Doc. 68 at 6.) Plaintiff asserts nothing in his C-file corroborates Defendant Cid's "manufactured" confidential memo of May 20, 2021, and infers that Defendant Peterson's placing the memo in his file that same date was improper because no investigation had occurred. (*Id.*)

Except for a single "128" "generated by free staff not custody" for Plaintiff's refusal to attend a dental appointment, Plaintiff did not incur a single rules violation report at either San Quentin State Prison or Centinela State Prison during four years of incarceration there. (Doc. 68 at 6.) Nor did he have any enemies. (*Id.*) Plaintiff maintains that according to a Classification Committee Chrono prepared by Corcoran staff, Plaintiff "'does not have a history of in-cell predatory or [assaultive] behavior towards inmates.'" (*Id.* at 6-7.) Plaintiff argues that "completely undercuts the baseless accusation that [he] was 'extorting inmates for their canteen on 4B'" and that this information was readily available to Defendants Peterson and Cid before Plaintiff's administrative segregation placement. (*Id.* at 7.)

Next, Plaintiff contends that had Defendant Scaife "done his due diligence" by considering Plaintiff's disciplinary record, Plaintiff would not have remained in administrative segregation on Scaife's authorization. (Doc. 68 at 7.) Plaintiff asserts the "only reason" he was released from administrative segregation after seven days was due to his hunger strike. (*Id.*) In the absence of a hunger strike, Plaintiff contends Defendants Peterson, Scaife and Cid would have permitted Plaintiff to remain in administrative segregation "with little to no investigation and nothing to corroborate the confidential memo" manufactured by Cid. (*Id.*) Alternatively, Plaintiff alleges he could have been transferred without just cause. (*Id.*) Either scenario would lead to Plaintiff being separated from his "legal work for weeks, if not months, heightening the possibility of [it] being lost and never returned, ending" Plaintiff's litigation. (*Id.* at 7-8.) Plaintiff contends that when Peterson was advised of his hunger strike, Plaintiff was released from administrative segregation on May 27, 2021. (*Id.* at 8.) He maintains that his placement in

7

1  administrative segregation did not advance any legitimate correctional goal because the

2  Classification Committee Chrono stated that "'no criminal activity nor rules violation report was

3  generated.'" (*Id.*)

4         Following his release from administrative segregation, Plaintiff was moved from Yard 4B

5  to Yard 3B "where it was even more difficult to gain law library access." (Doc. 68 at 8.) Plaintiff

6  contends he "is now subject to arbitrary and capricious actions of Corcoran prison" because the

7  false confidential memo is used "as a basis for a valid penological purpose when none exists."

8  (*Id.* at 9.)

9         Plaintiff further contends that false confidential memo was also the basis for "an ISU raid"

10  of his cell and a strip search of his person for illegal drugs. (Doc. 68 at 9.) Plaintiff asserts he

11  never used, purchased, or sold drugs, and has never been accused of such activity at San Quentin

12  or Centinela. (*Id.*) Stating neither Defendant Cid nor Scaife are named in grievance number

13  10488, Plaintiff asserts "they are key participants in the retaliation." (*Id.*) The actions of Peterson,

14  Cid and Scaife were meant to intimidate Plaintiff to abandon his grievances by not exhausting

15  them. (*Id.* at 10.) Plaintiff contends "Defendants were the rulers of their own little [fiefdom],

16  ignorant of God and contemptuous of the courts." (*Id.*)

17  Fourteenth Amendment Due Process

18         Beginning under the title "Claim IV," Plaintiff alleges Defendants Peterson, Scaife and

19  Cid "conspired" to prevent him from exhausting his grievances and denied him due process "by

20  having him thrown into" administrative segregation "based on a manufactured confidential kite"

21  they knew or should have known was false. (Doc. 68 at 10-11.) Plaintiff thereafter repeats many

22  of the factual assertions concerning "Claim III" and asserts nothing materially new. (*Cf.* Doc. 68

23  at 2-10 to *id.* at 10-13.)

24  Prayer for Relief

25         Plaintiff seeks a declaratory judgment, "nominal compensatory" and punitive damages

26  against each defendant jointly and severally," costs of suit, and any other relief the Court deems

27  proper. (Doc. 68 at 13-14.)

28

**C. Analysis**

<u>First Amendment Retaliation</u>

Prisoners have a First Amendment right to file prison grievances and lawsuits and retaliation against prisoners for exercising this right is a constitutional violation. *Rhodes v. Robinson*, 408 F.3d 559, 566 (9th Cir. 2005). A claim for First Amendment retaliation in the prison context requires: (1) that a state actor took some adverse action against the plaintiff (2) because of (3) the plaintiff's protected conduct, and that such action (4) chilled the plaintiff's exercise of his First Amendment rights, and (5) "the action did not reasonably advance a legitimate correctional goal." *Id.* 567-68. To prove the second element, retaliatory motive, plaintiff must show that his protected activities were a "substantial" or "motivating" factor behind the defendant's challenged conduct. *Brodheim v. Cry*, 584 F.3d 1262, 1269, 1271 (9th Cir. 2009). Plaintiff must provide direct or circumstantial evidence of defendant's alleged retaliatory motive; mere speculation is not sufficient. *See McCollum v. CDCR*, 647 F.3d 870, 882–83 (9th Cir. 2011); accord, *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014). In addition to demonstrating defendant's knowledge of plaintiff's protected conduct, circumstantial evidence of motive may include: (1) proximity in time between the protected conduct and the alleged retaliation; (2) defendant's expressed opposition to the protected conduct; and (3) other evidence showing that defendant's reasons for the challenged action were false or pretextual. *McCollum*, 647 F.3d at 882.

Liberally construing the second amended complaint and accepting all facts as true, Plaintiff plausibly alleges First Amendment retaliation claims against Defendants Peterson, Scaife, and Cid. Specifically, Plaintiff contends each took adverse action against him in the form of an improper administrative segregation placement because Plaintiff had filed two grievances pertaining to his right to access the courts, and further asserts that their actions chilled those rights and did not reasonably advance a legitimate correctional goal. *Rhodes*, 408 F.3d at 567-68.

<u>Fourteenth Amendment Due Process</u>

To establish a liberty interest in remaining free from administrative segregation, a prisoner must show that his placement in segregation resulted in an "atypical and significant hardship ... in

9

relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Richardson v. Runnels*, 594 F.3d 666, 672 (9th Cir. 2010) (to amount to a due process liberty interest administrative segregation must rise to the type of "atypical and significant hardship" contemplated in *Sandin*). Placement in segregation for administrative purposes "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration," and thus, generally does not violate a liberty interest protected by the Due Process Clause. *Hewitt v. Helms*, 459 U.S. 460, 468 (1983), abrogated in part on other grounds by *Sandin*, 515 U.S. 472.

To the extent that the placement in administrative, rather than disciplinary, segregation might give rise to a protected liberty interest, a prisoner is due only limited process. Specifically, the prisoner must be provided a timely informal review of the evidence justifying the decision to segregate the prisoner, through which he must be provided with notice of the charges resulting in his placement in administrative segregation and an opportunity to respond, either in writing or orally. *Hewitt*, 459 U.S. at 476; *see McLaughlin v. Felker*, No. CV-08-0831-RHW, 2011 WL 5593005, at *3 (E.D. Cal. Nov. 16, 2011) (citing *Toussaint v. McCarthy*, 801 F.2d 1080, 1100-01 (9th Cir. 1986)), abrogated in part on other grounds by *Sandin*, 515 U.S. 472 (process due prisoner placed in administrative segregation pending investigation of his involvement in a conspiracy to assault staff consisted only of an informal hearing, notice of the charge, and a chance to present his views). After the prisoner has been placed in administrative segregation, prison officials must periodically review the initial placement. *Hewitt*, 459 U.S. at 477 n.9; *Toussaint*, 801 F.2d at 1101. "Typically, administrative segregation in and of itself does not implicate a protected liberty interest." *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003); *see Sandin*, 515 U.S. at 472, 486 (discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest).

Disciplinary segregation as punishment for violation of rules and regulations cannot be imposed without complying with the procedural requirements of *Wolff v. McDonnell*, 418 U.S. 539 (1974). "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556.

1    With respect to prison disciplinary proceedings, the minimum procedural requirements that must

2    be met are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner

3    receives written notice and the time of the hearing, so that the prisoner may prepare his defense;

4    (3) a written statement by the fact finders of the evidence they rely on and reasons for taking

5    disciplinary action; (4) the right of the prisoner to call witnesses in his defense, when permitting

6    him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5)

7    assistance to the prisoner where the prisoner is illiterate or the issues presented are legally

8    complex. *Id*. at 563-71.

9        As long as the five minimum *Wolff* requirements are met, due process has been satisfied.

10   *Walker v. Sumner*, 14 F.3d 1415, 1420 (9th Cir. 1994), abrogated on other grounds by *Sandin*,

11   515 U.S. at 472. "[T]he requirements of due process are satisfied if some evidence supports the

12   decision by the prison disciplinary board ...." *Superintendent v. Hill*, 472 U.S. 445, 455 (1985);

13   *see Touissaint*, 926 F.2d at 802-03; *Bostic v. Carlson*, 884 F.2d 1267, 1269-70 (9th Cir. 1989).

14   The relevant inquiry is whether "there is any evidence in the record that could support the

15   conclusion reached ….as [t]he Federal Constitution does not require evidence that logically

16   precludes any conclusion but the one reached by the disciplinary board." *Hill*, 472 U.S. at 455-57.

17       Here, Plaintiff fails to allege plausible Fourteenth Amendment claims against Defendants

18   Peterson, Scaife, and Cid. This is so because Plaintiff has not alleged what process was denied

19   prior to his placement in administrative segregation. Other than stating he did not know why he

20   was placed in administrative segregation on May 20, 2021—which inferentially meets the notice

21   required by *Hewitt*, as well as the that required by *Wolff*—Plaintiff makes no additional assertions

22   concerning any denial of an informal hearing or an opportunity to present his views. *Hewitt*, 459

23   U.S. at 476; *McLaughlin*, 2011 WL 5593005, at *3. Nor do his allegations assert any denial of the

24   protections addressed in the remaining *Wolff* factors as concern the additional protections

25   afforded for a disciplinary hearing. To the extent that Plaintiff asserts that there was a due process

26   violation simply by being falsely accused, he is not entitled to relief. *See Hernandez v. Johnston*,

27   833 F.2d 1316, 1319 (9th Cir. 1987) (addressing Hernandez's "separable claim of a due process

28   right to accurate information in his prison record," the Ninth Circuit held Hernandez "was not

deprived of liberty by the presence of the challenged statements"); *see Hines v. Gomez*, 108 F.3d 265, 268-69 (9th Cir. 1997) (Ninth Circuit declined to extend the "some evidence" standard to a prison officer's initial accusation of a rule violation).

Because Plaintiff was provided with the applicable legal standards for a Fourteenth Amendment claim in this Court's March 7, 2024, order (*see* Doc. 14-16), has failed to allege sufficient facts to state a claim, and has had previous opportunities to amend, the Court assesses that Plaintiff cannot cure his pleadings and, thus, that further leave to amend would be futile. *See Hartman v. CDCR*, 707 F.3d 1114, 1129-30 (9th Cir. 2013) (affirming dismissal of first amended complaint and finding leave to amend futile where complaint's allegations belied plaintiff's entitlement to relief).

### D.    Individual versus Official Capacity

Lastly, the Court addresses Plaintiff's statements that he is suing Defendants Peterson, Scaife, and Cid "individually and in their official capacity." (*See* Doc. 68 at 3, 11.)

"Suits against state officials in their official capacity ... should be treated as suits against the State." *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Holley v. Cal. Dep't of Corr*., 599 F.3d 1108, 1111 (9th Cir. 2010) (treating prisoner's suit against state officials in their official capacities as a suit against the state of California). An official capacity suit "represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citation omitted). Such a suit "is not a suit against the official personally, for the real party in interest is the entity." *Id*. at 166.

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." *Aholelei v. Dep't of Public Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007). Indeed, the Eleventh Amendment prohibits federal courts from hearing a section 1983 lawsuit in which damages or injunctive relief is sought against a state, its agencies (such as CDCR) or individual prisons, absent "a waiver by the state or a valid congressional override...." *Dittman v. California*, 191 F.3d 1020, 1025 (9th Cir. 1999). "The State of California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court...." *Id.* at 1025-26 (citing *Atascadero State Hosp. v. Scanlon*, 473

U.S. 234, 241 (1985)). The Eleventh Amendment does not bar suits for money damages against state officials in their personal capacities. *Hafer*, 502 U.S. at 30.

Therefore, Plaintiff's claims for monetary damages against the named defendants in their official capacities are barred by the Eleventh Amendment.

## V.    CONCLUSION AND RECOMMENDATION

Accordingly, the Court **DIRECTS** the Clerk of the Court as follows:

1.  To mark Defendant Peterson's request for screening (Doc. 71) as resolved; and

2.  To add Captain N. Scaife and Sergeant A. Cid to the docket for this action as those individuals are named as defendants in Plaintiff's second amended complaint.

Further, for the reasons stated above, the Court **HEREBY RECOMMENDS**:

1.  This action **PROCEED** *only* on Plaintiff's First Amendment retaliation claims against Defendants Peterson, Scaife, and Cid, and in their individual capacities *only*, as alleged in the second amended complaint; and

2.  That any remaining claims in Plaintiff's second amended complaint be **DISMISSED**.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  **Within 14 days** after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court. Local Rule 304(b). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed 15 pages** without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the 15- page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C).

///

///

1       A party's failure to file any objections within the specified time may result in the waiver

2   of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

3   IT IS SO ORDERED.

4     Dated:   **April 11, 2025**           _____

5                                 UNITED STATES MAGISTRATE JUDGE

14